# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2023

Lyle W. Cayce
Clerk

———————

No. 22-60357
CONSOLIDATED WITH
No. 22-60424

———————

Wynnewood Refining Company, L.L.C.,

*Petitioner*,

*versus*

United States Environmental Protection Agency,

*Respondent*.

———————————————————

Petition for Review of an Action of
the Environmental Protection Agency
Agency Nos. 87 Fed. Reg. 24294,
EPA-420-R-22-012

———————————————————

Before Higginbotham, Smith, and Elrod, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Wynnewood Refining Company, L.L.C. ("Wynnewood"), challenges the EPA's April ACA—an agency action that created an alternative-compliance approach for certain small refineries with outstanding Renewable Fuel Standard program ("RFS") obligations.[1] Under the April ACA, certain

———————————————

[1] Notice of April 2022 Alternative Compliance Demonstration Approach for

small refineries—including Wynnewood—are not required to retire any Renewable Identification Numbers ("RIN") to meet their 2018 RFS compliance obligations. Wynnewood contends the April ACA does not go far enough—in its view, EPA should have provided additional relief in the form of replacement RINs. We do not resolve the merits of Wynnewood's claim, for venue is proper only in the District of Columbia Circuit.

## I.

This matter is procedurally coordinated with *Calumet Refining Co. v. EPA*, No. 22-60266, ___ F.4th ___ (5th Cir. 2023), which reviews the relevant statutory and regulatory background in detail. Because we transfer this case for improper venue under 42 U.S.C. § 7607(b)(1), that background is unnecessary to the disposition of this case, so we proceed directly to the procedural history.

### A. Procedural History

This matter involves the CAA's subparagraph (B) small refinery exemption. *See id.* § 7545(*o*)(9)(B). In September 2018, Wynnewood filed its subparagraph (B) exemption petition for RFS compliance year 2018. EPA granted Wynnewood's petition in August 2019.[2]

That exemption petition was subsequently ensnared in proceedings litigated in the D.C. Circuit. *See Renewable Fuels Ass'n v. EPA*, No. 19-1220 (D.C. Cir. Oct. 22, 2019). Details concerning the D.C. Circuit proceedings are mostly unrelated to the dispute at hand—apart from two facts: *The first*

---

Certain Small Refineries Under the Renewable Fuel Standard Program, 87 Fed. Reg. 24,294 (April 25, 2022).

[2] Memorandum Decision on 2018 Small Refinery Exemption Petitions from Anne Idsal, Acting Asst. Admin'r, Off. of Air and Rad. to Sarah Dunham, Dir., Off. of Transp. and Air Qual. (Aug. 9, 2019), at 2.

is that among the issues to be decided in those proceedings were challenges by renewable-fuels interests to the legality of EPA's grant of the 2018 small refinery exemptions. *The second* is that EPA moved for voluntary remand without vacatur to consider Wynnewood's petition with regard to the Tenth Circuit's "alternate holdings" in *Renewable Fuels Ass'n v. EPA* ("*RFA*").[3] The D.C. Circuit granted EPA's motion on December 8, 2021.[4]

On remand, EPA flipped its position on Wynnewood's 2018 exemption petition. Applying its new interpretation of the CAA and RIN-passthrough economic theory, the agency denied Wynnewood's 2018 exemption petition, along with thirty-five other 2018 compliance year exemption petitions ("April Denial").[5]

Concurrent with the April Denial, EPA published the April ACA in a "separate and independent" agency action.[6] The April ACA addresses the RFS compliance obligations of the thirty-one small refineries whose 2018 compliance-year petitions had initially been granted in 2019.[7] Under the April ACA, those thirty-one refineries do not have to retire any RINs to meet

───────────────

[3] 948 F.3d 1206 (10th Cir. 2020) ("*RFA*"), *rev'd on other grounds sub nom. Holly-Frontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172 (2021) ("*HollyFrontier*") and *vacated*, No. 18-9533, 2021 WL 8269239 (10th Cir. July 27, 2021).

[4] *Renewable Fuels Ass'n*, No. 19-1220, Doc. 1925942, at 3 (D.C. Cir. Dec. 12, 2021).

[5] April 2022 Denial of Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program, 87 Fed. Reg. 24,300 (Apr. 25, 2022).

[6] EPA, EPA-420-R-22-012, April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries (2022), at 2 ("While the need for the Compliance Action flows from the SRE Denials, and there would be no need for the Compliance Action without the SRE Denials, the actions are separate and independent from each other.").

[7] *See supra* note 5 and accompanying text.

22-60357
c/w No. 22-60424

their 2018 RFS compliance obligations.[8]  Instead, they are required only to "resubmit their annual compliance reports for 2016, 2017, and/or 2018 and report their actual gasoline and diesel fuel production, actual annual RVOs, and zero RIN deficit carryforward into the following compliance year."[9]

## II.

Wynnewood does not object to the April ACA's elimination of the RIN retirement obligations.  Nor does it object to the April ACA's alternative reporting requirements.  Instead, it complains that the April ACA does not go far enough.

Wynnewood theorizes that it has been shortchanged by EPA because it purchased and retired approximately $31 million in RINs while it waited for EPA to adjudicate its 2018 exemption petition.  Once that petition was granted, however, Wynnewood did not have to retire any RINs.  EPA thus "unretired" and returned those 2018-eligible RINs to Wynnewood.[10]

But a RIN may be used for compliance only during the calendar year in which it was generated or the calendar year following.  40 C.F.R. § 80.1427(a)(6)(i); *see also id.* §§ 80.1428(c), 80.1431(a)(iii).  So it is impossible for a refinery to use its 2018-eligible RINs to meet its RFS obligations for compliance years 2020 and beyond.  Any 2018-eligible RINs thus lose

---

[8] *See generally* EPA, EPA-420-R-22-012, April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries (2022).

[9] *Id.* at 19.

[10] That is the position Wynnewood would have been in had EPA not subsequently denied its 2018 exemption petition in the April Denial.  Wynnewood challenges the legality of that subsequent denial in a separate case.  *See Calumet*, No. 22-60266 (5th Cir. 2023).  In that case, Wynnewood contends EPA's denial of its 2018 exemption petition was impermissibly retroactive, contrary to law, and counter to the evidence.

value over time. That's why Wynnewood's 2018-eligible RINs—which it retired whilst waiting for EPA to adjudicate its exemption petition—had lost approximately $19 million in value by the time they were unretired and sent back to the refinery.

Wynnewood therefore claims that it can be made whole only if the April ACA—in addition to excusing its 2018 RFS compliance obligations— replaces its 2018-eligible RINs with newly-minted "replacement RINs" that can be used to meet current RFS compliance obligations.

## III.

We should not proceed to the merits before addressing EPA's motion to transfer venue to the D.C. Circuit under 42 U.S.C. § 7607(b)(1). The CAA includes a channeling provision delineating the appropriate venue in which a petitioner may seek judicial review:

> A petition for review of . . . any . . . nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action . . . under this chapter . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

42 U.S.C. § 7607(b)(1).

Determining where proper venue lies under § 7607(b)(1) requires us to conduct a two-step analysis: In the first step, we determine whether the

challenged agency action is "nationally applicable," as distinguished from "locally or regionally applicable." *Id.* If nationally applicable, our inquiry ends because proper venue exists only in the D.C. Circuit. But if the challenged action is "locally or regionally applicable," we proceed to step two.

That second step begins with the default presumption that venue is proper in this circuit. *See Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016) ("*Texas 2016*"). To overcome that presumption, a challenged action must satisfy two necessary and independent sub-conditions. Namely, we must determine that (a) it "is based on a determination of nationwide scope or effect" and (b) the Administrator, in taking that challenged action, "finds and publishes that such action is based on such a determination." Only if both sub-conditions are satisfied is venue proper solely in the D.C. Circuit.

## A. Step One

EPA first avers the April ACA is "nationally applicable" agency action because it "applied a 'common, nationwide analytical method' when issuing the April [ACA]." The agency analogizes the April ACA to the SIP Calls in *Texas v. EPA*, where this court reasoned that the agency's disapproval of and call to correct thirteen states' plans regarding air quality standards was a "nationally applicable regulation." No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) ("*Texas 2011*").

As explained in *Calumet*, No. 22-60266 (5th Cir. 2023), we disagree with EPA's contention. In-circuit precedent counsels that it is the *legal* effect—and not the practical effect—of an agency action that determines whether it is "nationally applicable." *See Texas 2016*, 829 F.3d at 419. The April ACA has no legal effect on any small refinery other than the thirty-one specifically identified in the action. It is therefore not "nationally applicable" action under § 7607(b)(1).

6

22-60357
c/w No. 22-60424

## B. Step Two

We begin step two with the presumption that venue is proper in this circuit. That's because we have already determined, at step one, that the agency action is "locally or regionally applicable." *See Texas 2016*, 829 F.3d at 419. A challenged action overcomes that presumption if (1) it is based on a determination of nationwide scope or effect, and (2) the Administrator, in taking such action, "finds and publishes that such action is based on such a determination." 42 U.S.C. § 7607(b)(1). EPA contends the April ACA meets both sub-conditions.

We begin with the second sub-condition—whether the Administrator found and published that such an action was based on a determination of nationwide scope or effect. That is easily met, as no party contests that the Administrator so found and published in the April ACA.[11]

Turning to the first sub-condition, both parties agree that we "independent[ly] assess[]" whether the action is based on a determination of nationwide scope or effect. *Texas 2016*, 829 F.3d at 420 (citation omitted). Consequently, we do not accord deference to EPA's determination.

After conducting an independent determination, we agree with EPA that the April ACA is based on a determination of nationwide scope or effect. That's because the April ACA was based on the *collective impact* flowing from the April Denial—a separate and independent agency action.

Recall that in the April Denial, EPA denied thirty-six small refineries' 2018 exemption petitions. Small refineries whose petitions were adjudicated

---

[11] *See* 87 Fed. Reg. at 34,874 ("[T]he Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of 'nationwide scope or effect' within the meaning of CAA section 307(b)(1).").

in the April Denial thus had an immediate obligation to comply with their 2018 RFS obligations by retiring 2018-eligible RINs. That meant they had to retire a total of 1.4 billion 2018-eligible RINs—320 million of which had to be "advanced biofuel RINs."

But EPA found there were not enough 2018-eligible RINs left. At the time of the April ACA, EPA decided that there were only 55 million unretired advanced biofuel RINs. It was therefore impossible for all small refineries impacted by the April Denial to satisfy their 2018 RFS compliance obligations. Furthermore, EPA found that there were only 1.8 billion unretired RINs. According to the agency, a 1.4 billion RIN drawdown could "jeopardize compliance for all obligated parties" by eliminating "an important and necessary programmatic and cost spike buffer," which could thus potentially "undermine the proposed standards for 2022 . . . to the point of making them unachievable."[12] EPA exclusively addressed the continuing viability of the RFS program as a whole. Consequently, the April ACA is based on a determination of nationwide scope or effect.

Wynnewood disagrees. It claims the April ACA is not based on a determination of nationwide scope or effect because "it is predicated on the 31 individualized hardship adjudications that EPA previously made regarding those same 31 refineries, all of which were indisputably 'local or regional in scope.'"

We agree with EPA. True enough, the April ACA would not exist without the April Denial.[13] Also true, each of the exemption petitions in the

---

[12] EPA, EPA-420-R-22-012, April 2022 Alternative RFS Compliance Demonstration Approach for Certain Small Refineries (2022), at 13–14 (emphasis omitted).

[13] *Id.* at 2 ("[T]he need for the [April ACA] flows from the [April Denial], and there would be no need for the [April ACA] without the [April Denial] . . . .").

April Denial was adjudicated based on refinery-specific facts.[14]  None of that matters.  Both Wynnewood and EPA agree that the April ACA is "separate and independent" from the April Denial.  That means—as Wynnewood's own briefing admits—that "the April ACA must independently pass APA muster."  Accordingly, the April ACA can be "based on a determination of nationwide scope or effect" even if the adjudications in the April Denials are based on refinery-specific determinations.

*    *    *    *    *

The April ACA was based on the collective effects of the April Denial on the RFS program as a whole.  That is a "determination of nationwide scope or effect" under § 7607(b)(1).  EPA's motion to transfer venue is GRANTED, and this matter is TRANSFERRED to the District of Columbia Circuit.

---

[14] *See Calumet*, No. 22-60266 (5th Cir. 2023).

22-60357
c/w No. 22-60424

Patrick E. Higginbotham, *Circuit Judge*, concurring:

I agree that venue is only proper in the D.C. Circuit, but write separately to express my disagreement with the majority's reliance on the "legal effect" theory at step one of its venue analysis. Instead, as I explain in dissent in *Calumet*, No. 22-60266, ___ F.4th ___ (5th Cir. 2023), I would look to the plain meaning of 42 U.S.C. § 7607(b)(1) to determine proper venue.